HEARD NOVEMBER TERM, 1874.

## BILLINGS *vs.* PERRY.

Where, under a decree to account, a report was made ascertaining a balance due by the executor, and upon the coming up of the case again a second decree to account was made directing the Commissioner to state the accounts since the date of the ascertained balance, beginning with that balance as a charge against the executor, and before a second report was made the executor died insolvent: *Held,* That the second decree was not entitled to rank as a judgment for the ascertained balance in the winding up of the estate of the executor.

### BEFORE MACKEY, J., AT LANCASTER, JULY, 1874.

This was a bill in equity by K. G. Billings, executor of Minor Clinton, deceased, against J. D. Perry and others.

The case is as follows:

Minor Clinton, Esq., died, and his estate is largely insolvent. On the     day of     , 1867, K. G. Billings, as executor of his last will, filed his bill in equity against the legatees, devisees and creditors of M. Clinton, seeking, *inter alia,* a sale of the real estate of the testator, a marshaling of the assets of the estate, an injunction restraining creditors from suing and further prosecuting suits at law, and requiring them to establish their claims in that Court. Whereupon, June the 27th, 1867, an order was made requiring, *inter alia,* the creditors to come in and establish their claims before B. R. Clyburn, Esq., as Special Referee.

In compliance with this order, J. D. Perry and others presented a claim evidenced by certain records of the Equity Court, which culminated·in an order or decree made by Chancellor Ingliss in the cause therein stated, of which the following is a copy, the names of the cases stated in the caption being omitted:

Abram Perry, who died in the year 1839, left in force a will, of which the defendant, M. Clinton, Esq., is the surviving executor. The only provision of the will which need now be adverted to is the direction that after the death of testator's wife, to whom an estate for the term of her own life had been given, the property should, under certain circumstances, which in fact there came to exist, be divided amongst such children of his brothers and sisters as should then be living. The distributees being designated thus not by name, but only by relationship, and being unknown to the executor, the latter, soon after the death of the widow, to wit, on the   day of ,́ , A. D. 1853, exhibited his *ex parte* petition in this Court, with a view to call in all the persons entitled under the terms of designation and require them to prove their relationship.

At June Term, 1853, an order was made in that case requiring the children of the brothers and sisters of the testator, living at the death of the widow, to establish their rights before the Commissioner within a day limited, and the Commissioner to make publication therefor and report at the next term. Publication was accordingly made very extensively, and at the June Term, 1854, the Commissioner reported the names of thirty-four persons who had satisfactorily established their relationship to the testator within the terms of description, and their consequent right to participate in the distribution. These persons were scattered in six different States and in seventeen different Counties. The Commissioner, in his report, also mentioned the names of four other persons who, in the testimony taken before him in behalf of other parties, were said to be nephews of the testator, among whom was Willis Richards, but states that no claim had been preferred on the behalf of any of the four to a share in the distribution. An order was thereupon made, at the same term, that the said report be confirmed and become the decree of the Court as to those whose rights are therein reported and established.

On the 24th April, 1857, nearly three years after the date of this decree, James Baker and eight other of the thirty-four persons who had so established their rights exhibited their bill in this

Court in the cause first stated at the head of this order, on behalf of themselves and the twenty-five of whom the names are stated in an exhibit to the said bill, against Minor Clinton, Esq., executor, for an account of the estate in his hands and a distribution of the same.

On the 22d June, 1857, the executor, Minor Clinton, Esq., exhibited his bill in this Court, stating that since the decree establishing the rights of the thirty-four persons claiming as legatees, some of those persons had died, and he knows not who the personal representatives of such deceased legatees were, if there were any ; that others were stated to have assigned their claims, and that a part of them had filed their bill against him, and praying that the nephews and nieces of the testator, Abram Perry, living at the death of his widow, the personal representatives of such of them as had died during the interval since the decree of June Term, 1854, and the assignees of such as had transferred their interests should interplead and settle their several and respective rights to the funds in his hands. To this bill the thirty-four persons who had previously established their relationship, or their representatives, where known, were made defendants, and also James E. Cureton, the petitioner in the latter of the two petitions, the style of which is stated at the head of this order, who claimed as the assignee of Abram Perry Hall, and who filed an answer to the said bill. To neither of these causes was Willis Richards or his representative a party.

In the case of *Baker et al.* vs. *Clinton, executor*, an order was made, at June Term, 1857, referring it to the Commissioner to take the accounts of the defendant, as executor, and report at the next term. Accordingly, at June Term, 1858, the Commissioner brought in his report upon the accounts of the executor, showing a balance in his hands on the 16th January, 1855, of $14,563.30, subject to certain deductions and credits for commissions on paying over and for payments supposed or alleged to have been made to individual distributees.

The Commissioner proceeds further, in his report, to state the proper distribution of this balance amongst the thirty-four nephews and nieces already ascertained as entitled to take shares, and to ascertain the distributive portion of each one of them. Exceptions were filed to this report by both parties, plaintiff and defendant, all of them having respect, however, to some supposed error in the

Commissioner's statement of the executor's accounts. Some of these exceptions were abandoned at the hearing. An order was made at the June Term by which some of the exceptions not abandoned were sustained and others overruled, and all the costs were directed to be paid out of the funds in the hands of the executor, but there was no general confirmation of the report.

The executor, it seems, has made payments to some of the distributees upon the basis of the report and assumption of its correctness.

On the 14th May, 1860, Columbus Heard exhibited his bill against M. Clinton, Esq., executor, claiming that Willis Richards, a nephew of the testator, Abram Perry, was living at the death of the widow and so entitled to a share of the estate; that he had since died and administration of his personal estate had been granted to the plaintiff, and praying payment of his share. The facts of Willis Richards' relation to the testator, his surviving the widow, his subsequent death and the grant of administration have been fully established. Nearly six years had elapsed after the decree of June, 1854, before this claim was preferred. Every reasonable effort had been made by the executor to ascertain the parties entitled to distribution, and during all the interval proceedings of divers forms had been pending in regard to the distribution of the estate. No complete settlement of the executor's accounts and apportionment of the assets have yet been made by any decree of this Court, and a large part of the funds is yet in the executor's hands. Willis Richards is unquestionably entitled as one of the class of persons designated by the testator. Whatever loss or injury must result from the long delay in preferring and aserting his claim, notwithstanding the continued and *bona fide* efforts to advertise him of his rights, must be endured by himself or those who claim under him. He must participate in the fund so far as that can be done without loss to those who have acted in this, upon the reasonable and well-authorized assumption there was no such claimant.

The petition of Rebecca Massey and others, being certain of the thirty-four nephews and nieces whose right to participate had been previously adjudicated, and the petition for his assignee, are petitions filed on the 28th May, 1860, in the cause of *Baker et al.* vs. *Clinton, executor*, in each of which the benefit of a decree supposed to have been made in that cause is sought. It does not appear, however, that any final decree fixing the rights and shares of the parties was made in that cause. In this state of facts, as now known, it is mani-

fest that in no one of these causes are the pleadings free from defect in the want of proper parties.    The personal representative of Willis Richards, clearly a distributee, is not a party to any of the earlier proceedings; and to the recent bill brought by his personal representative, not certainly for a specific or pecuniary legacy, but for a distributive share in a fund in which thirty-four others have interests, there are no other than himself and the executor of the original testator.    Yet in some one or other of them every one interested seems to be before the Court; and with a view, if possible, to make an end of this protracted and expensive litigation, an order will be framed blending the purposes of all the different proceedings:

It is ordered that the Commissioner of this Court audit and state the accounts of the executor, Minor Clinton, Esq., since the date of the balance ascertained in the report filed in the case of *Baker et al.* vs. *Clinton, executor,* on the 18th June, 1858, and beginning with a charge against the executor of that balance; that in such accounting the said executor be allowed credit for all proper charges against the estate arising since that time, including the counsel fee passed at the present term, also for two and one-half per centum commissions for distribution, so far as such commissions have not been previously allowed and deducted; that he deduct from said balance all the costs of these various causes, except the costs of the plaintiff in the case of *Columbus Heard, administrator,* vs. *M. Clinton, executor;* that he ascertain and state the proper distribution of the net residue, admitting the said Columbus Heard, as administrator of the estate of Willis Richards, to a share in the said distribution, as well as the thirty-four persons whose rights had been previously established; that he state accounts between the executor and each distributee to whom the executor had at any time made any payments, allowing to the executor in such accounts credit for all such payments at the date thereof; that if, upon the adjustment of these various accounts, it shall appear that he had, before he received notice from the said Columbus Heard of his claim as administrator of Willis Richards, paid to any of the distributees an excess over the share of such distributee, as said share shall now be ascertained, the said executor shall be reimbursed for such over-payment out of the share of the said Willis Richards, except in so far as such over-payment shall exceed the share as

ascertained in the Commissioner's report in *Baker et al.* vs. *Clinton, executor,* filed as aforesaid on the 18th June, 1858; that he ascertain the amount or balance to each distributee who has not been paid in full; that to the conclusion of the Commissioner's report, in respect to any of these matters now referred, the parties, or any of them, be at liberty to file their exceptions at any time within ten days after notice of the filing of the report, (A. A. 1836, § 9, Stat., 341,) the said exceptions to be heard and determined at Chambers after legal notice; that when the balance in the hands of the executor, Minor Clinton, Esq., shall be thus fully ascertained, the said Clinton pay said balance into the hands of the Commissioner; that out of said fund so to be paid in the Commissioner pay and satisfy all the costs of these several causes, except as aforesaid, and distribute the residue according to the several and respective rights of the distributees as then ascertained, and that the costs of the plaintiff in the case of *Columbus Heard, administrator,* vs. *M. Clinton, executor,* be paid out of the share which shall be found due to the said Columbus Heard, administrator.

This order or decree was filed in the Commissioner's office July 20th, 1860. Owing to the late war or some other cause, the reference therein directed was never held, nor the balance in the hands of M. Clinton, as executor of A. Perry, ascertained in the lifetime of the executor; but the Referee, B. R. Clyburn, on the reference held in obedience to the order dated June 27th, 1867, herein above referred to, ascertained the same, and in his report on claims, filed July the 10th, 1874, it is established to be $14,013.30, with interest from June, 1858. In reference to its status, however, he reports this: "Exhibit B is the claim of the legatees of A. Perry, deceased. It is contended that this claim is a decree, having the effect of a judgment. Referee regards it as a matter of law for the Court to decide—the testimony is reported." Upon this branch of the cause, the presiding Judge made the following order or decree:

MACKEY, J. Upon hearing that portion of the report of B. R. Clyburn, Esq., Referee, relating to the claim of the legatees of A. Perry, to set up a decree of Chancellor Ingliss, dated June 29, 1860, as a judgment against the estate of Minor Clinton, deceased, which question is submitted to the Court for its decision by the said report, it is adjudged and decreed that the said decree was interlocutory only, and does not operate as a judgment against the

estate of the said Minor Clinton, deceased, and that the same be disallowed as a preferred claim against said estate.

The legatees of A. Perry appealed on the following grounds:

1. Because, it is respectfully submitted, His Honor erred in deciding that the decree of Chancellor Ingliss was interlocutory only, and in not allowing it to take rank as a judgment of a Court of record.

2. Because the said decree was and is a judgment against M. Clinton, deceased, for $14,013.30 in favor of appellants.

*Moore,* for appellants.

*Kershaw & Connors, Allison,* contra.

March 23, 1875.   The opinion of the Court was delivered by

Moses, C. J.   Whether the decree in question was entitled to rank as a judgment against the testator, Minor Clinton, Esq., at his death does not depend on our recognition of it, either as final or interlocutory.

It may be conceded to be final so far as it established a right to an account on the part of those claiming interests under the will of Josiah D. Perry, of which he was the surviving executor.   It was the material issue between the parties, and nothing remained to be done but take the accounts and thereby ascertain the indebtedness, if any, of the executor to the estate.   The decree "is final to the extent which it goes, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting by further decree the accounts between the parties pursuant to the decree passed."—*Thompson* vs. *Dean,* 7 Wallace, 346.   But though final, as fixing the liability of the executor to account, the result which was to follow the proceeding on the order remained yet to be ascertained.   Until that was established and confirmed by the Court, no money decree could be rendered of rank and dignity with a judgment at law.

Chancellor Ingliss' decree, so far from passing on the account reported by the Commissioner at June Term, 1858, by his order extended the reference, and directed that the accounts since the date of the balance so reported should be credited, "beginning with the said balance as a charge against the executor, who should be

allowed credit for all proper charges arising against the estate since that time." When the account should be concluded under his order, it was then to be subject to exceptions to be heard and determined at Chambers after legal notice; "and when the balance in the hands of the executor, Minor Clinton, Esq., shall be thus fully ascertained, the said Clinton shall pay the said balance into the hands of the Commissioner, who shall," &c. The order found and established no amount; this was left to depend on the result of the further examination which he ordered.

If it was a judgment establishing a sum recovered, for what amount was it to stand? How could it be enforced by a *writ* of *fieri facias?* How or against whom could a writ of attachment have issued for default of payment? For if it was a decree ordering the payment of money, there should have been some one against whom it could have been enforced by the proper process of the Court.

The view which we take of the order renders it unnecessary to inquire how far, if it could be considered a money decree, claiming rank with a judgment at law, it was affected by the Act of 1840, 11 Stat. at Large, 116.

*Wright,* A. J., and *Willard,* A. J., concurred.